THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
ROBERT J. MCGAHAN (Cal. Bar #196568)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0713
    Facsimile: (213) 894-6269
    E-mail: Richard.Robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SEYMOUR M. LAZAR, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 05-587(D)-JFW <br> No. CR 05-587(E)-JFW <br><br> **GOVERNMENT'S SENTENCING MEMORANDUM** <br><br> Sentencing: January 28, 2008 <br> Time: 11:00 a.m. |

Plaintiff United States, by and through its counsel of record, Assistant United States Attorney Richard E. Robinson ("AUSA Robinson"), hereby submits the government's Sentencing Memorandum with regard to the Court's sentencing of defendant Seymour M. Lazar.

January 23, 2007                    THOMAS P. O'BRIEN
                                        United States Attorney
                                        GEORGE S. CARDONA
                                        Chief Assistant United States Attorney

                                        /s/
                                        RICHARD E. ROBINSON
                                        Assistant United States Attorney
                                        Counsel for Plaintiff
                                        United States of America

# SENTENCING MEMORANDUM

## I. INTRODUCTION

Defendant Seymour M. Lazar ("Lazar") faces sentencing by the Court following his guilty pleas on October 18, 2007 to three offenses: false declaration before a federal court, in violation of 18 U.S.C. § 1623(a), as charged in count one of the third superseding information; subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1), as charged in count fifteen of the second superseding indictment ("SSI"); and obstruction of justice, in violation of 18 U.S.C. § 1503, as charged in count seventeen of the SSI.

Defendant pleaded guilty to these offenses pursuant to his written plea agreement with the government (the "Plea Agreement"). In addition, pursuant to the Plea Agreement, Lazar is obligated to civilly forfeit a total of $1,500,000 to the government and to file amended individual income tax returns for the years 1999, 2000, and 2001 that report as his income the payments made by Milberg Weiss for Lazar's benefit during those years. Lazar has also agreed to pay a fine of $600,000, the statutory maximum for the three offenses to which he pleaded guilty.

The government, Lazar, and the Probation Office concur that defendant's advisory Sentencing Guideline range is 27 to 33 months. The government recommends that the Court make an 8-level variance from Lazar's offense level of 18, in view of defendant's poor health condition and advanced age. This would result in a reduced offense level of 10 and advisory range of 6 to 12 months. The government further recommends that the Court sentence defendant to the low-end of his range, i.e., 6 months, and that the Court impose a sentence of probation that defendant may serve in home detention. The Probation Office recommends that defendant be sentenced to probation for 2 years with 6 months of home detention. See letter dated January 28, 2008 from U.S. Probation Officer Michael Barrett to the Court ("USPO Barrett Letter") at 2-3. Lazar simultaneously requests an 8-

level variance, a 2 year period of probation, and 6-month period of home confinement.  See Defendant Seymour Lazar's Sentencing Position ("Defendant's Position") at 13-14.

The government and the Probation Office differ from Lazar on one key issue regarding his sentence, however: The government recommends that Lazar serve the full 6 months in home detention following imposition of sentence.  The government concurs with the Probation Office that such further home detention is appropriate "to remind defendant of the need to comply with the terms of probation and to reinforce the seriousness of the offense to which he has been convicted."  USPO Barrett Letter at 4.  Lazar contends, to the contrary, that he should not have to serve any home confinement at all.  He maintains that he should receive credit against such a period of home detention for the 203 days that he was confined to his home as a condition of his pre-trial release during the early months of the case.  See Defendant's Position at 11-12.

The Court should not engage in "crediting" defendant's pre-trial home confinement against the term of home detention that it may impose as a condition of a sentence of probation since doing so would result in insufficient punishment, contrary to the purposes of 18 U.S.C. § 3553(a).

**II.    ADVISORY SENTENCING GUIDELINES**

The parties and the Probation Office have no disputes concerning the applicable Sentencing Guidelines calculations, which are as follows:

  A.    Applicable Guidelines Manual Version

The November 2001 Guidelines Manual is the applicable version because it was in effect at the time defendant committed the most recent offense to which he pleaded guilty, i.e., count seventeen of the SSI which charges defendant with obstruction of justice in or about February 2002.  The current November 2007 Guidelines Manual should not be applied because it provides for a higher base offense level for obstruction of justice, pursuant to § 2J1.2, than the November

2001 Guidelines Manual; therefore its application would violate the ex post facto clause. U.S.S.G. § 1B1.11(b); PSR ¶ 7 fn. 1.

### B. Adjusted Offense Level for Obstruction of Justice

The base offense level for this offense is 12, pursuant to U.S.S.G. § 2J1.2. Since no specific offense characteristics or other adjustments are applicable, the resulting adjusted offense level is also 12. PSR ¶¶ 72-77.

### C. Adjusted Offense Level for False Declaration Before a Federal Court

The base offense level for this offense is 12, pursuant to U.S.S.G. § 2J1.3(a), which is increased 3 levels for substantial interference with the administration of justice, pursuant to U.S.S.G. § 2J1.3(b)(2), and increased 2 levels for defendant's abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3, resulting in an adjusted offense level of 17. PSR ¶ 78-85.

### D. Adjusted Offense Level for Subscribing to False Tax Return

The base offense level for this offense is 16, based on the amount of tax loss that was the object of the offense, including relevant conduct. U.S.S.G. §§ 2T1.1(a)(1), 2T4.1. In this regard the parties stipulated in the Plea Agreement that the tax loss with respect to unreported income to defendant arising from the $433,000 in payments made by Milberg Weiss, at defendant's direction and for defendant's financial benefit, during 1999 through 2001, was more than $80,000 and less than $200,000. Plea Agreement ¶ 18.[1]  This is consistent with the PSR's calculation of the applicable tax loss at $121,240. PSR ¶¶ 62-65. The offense level of 16 is increased 2 levels because defendant failed to report more than $10,000 of income he derived from criminal activity, pursuant to U.S.S.G. § 2T1.1(b)(1). There are no other specific offense characteristics or adjustments, so the resulting adjusted offense level is 18. PSR ¶ 66-71.

---

[1] The parties stipulated that Milberg Weiss's payments made during 1999 and 2001 are relevant conduct for purposes of determining defendant's sentence, and therefore are to be considered in addition to the Milberg Weiss payments made in 2000, pursuant to U.S.S.G. § 1B1.3. Plea Agreement ¶ 18.

E.  Total Adjusted Offense Level

The combined adjusted offense level for all three offenses is 21, taking into account the grouping rules pursuant to U.S.S.G. § 3D1.4. PSR ¶¶ 86. This should be reduced by 3 levels based on defendant's acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a), (b)(2), resulting in a total adjusted offense level of 18. Plea Agreement ¶¶ 19, 26(c); PSR ¶¶ 87-89.

F.  Advisory Guidelines Range

Defendant has no criminal history points and therefore is in Criminal History Category I. PSR ¶¶ 95-96. Assuming a total adjusted offense level of 18, defendant's advisory Sentencing Guidelines range is 27 to 33 months. PSR ¶ 140.

G.  Fine

Defendant has agreed to pay the statutory maximum fine of $600,000 within the time period ordered by the Court, after his sentencing. Plea Agreement ¶ 22(g). Defendant has ample resources to pay this fine amount. PSR ¶ 132-133. The amount, although above the range of $6,000 to $60,000 provided by U.S.S.G. § 5E1.2(c), is appropriate because it is intended to ensure disgorgement of gain that cannot be obtained through restitution.[2] See Application Note 4 to § 5E1.2.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

A.  The Government's Recommendation

The government respectfully recommends that the Court make an 8-level

---

[2] An order of restitution is not appropriate in this case. Restitution based on Lazar's making a false declaration to a federal court in the Xerox class action, in violation of 18 U.S.C. § 1623(a), is not warranted because it would be impracticable to identify specific victims and quantify a pecuniary loss to each of them sustained as a result of defendant's conduct. See U.S.S.G. § 5E1.1(b)(2); 18 U.S.C. §§ 3663(a)(1)(B)(ii); 3663A(c)(3); PSR ¶¶ 156-157. Restitution based on Lazar's subscribing to a false tax return is not authorized for tax offenses prosecuted under Title 26 and, in any event, is addressed by Lazar's filing his amended returns and paying any additional tax due. Restitution based on Lazar's obstruction of justice, in violation of 18 U.S.C. § 1503, with regard to his causing destruction of documents responsive to a grand jury subpoena served on him is not warranted because such conduct impaired the government's investigation but did not harm any individual victim.

variance from defendant's total adjusted offense level of 18, thereby reducing his offense level to 10 and resulting in a corresponding advisory Sentencing Guidelines range of 6 to 12 months. The government further recommends that Lazar be sentenced to a term of probation of 2 years on each of the three counts of conviction, to be served concurrently, with the condition that defendant serve the initial 6 months of that term in home detention. Electronic monitoring of defendant during home detention should not be required given defendant's health limitations. Finally, the government recommends that Lazar be ordered to pay the statutory maximum fine for the three offenses of conviction, in the sum of $600,000, and that no restitution be ordered in this case. See Plea Agreement ¶¶ 6-9, 22(h), (g). The government's sentencing recommendation is consistent with the sentencing recommendation of the Probation Office. See USPO Barrett Letter. It is also consistent with the government's obligations under the Plea Agreement with regard to defendant's sentencing.[3] The government submits that the recommended sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2).

       B.     Nature and Circumstances of the Offenses

Lazar's offenses flow from his participation in a secret payment arrangement with the Milberg Weiss law firm that spanned from 1979 to at least 2002, during which he served, and caused his relatives and an entity he controlled to serve, as named plaintiffs in approximately sixty-seven class actions and derivative shareholder litigation filed throughout the country (the "Lazar Lawsuits"). Under this arrangement, Lazar secretly shared a portion (generally 10%) of the attorneys' fees that Milberg Weiss obtained in the Lazar Lawsuits.

---

[3] The government's recommendation presumes defendant's compliance with his obligations under the Plea Agreement. To date, defendant has complied with his obligations under the Plea Agreement to pay $500,000 to the government as the first installment payment of his civil forfeiture of $1,500,000; to file amended personal returns for tax years 1999, 2000, and 2001; to produce certain subpoenaed records; and to provide certain written privilege waivers.

1 　　　　　　　　　　　　　　　　　　Lazar directed Milberg Weiss
2 to make the payments to various intermediaries selected by Lazar.  Lazar, in turn,
3 directed the intermediaries to use or apply the Milberg Weiss payments for the
4 benefit of Lazar.  The government has determined that Milberg Weiss paid
5 approximately $2.5 million to intermediaries of Lazar in connection with the Lazar
6 Lawsuits.[4]

7 　　　　The Milberg Weiss payments to Lazar's intermediary lawyers were falsely
8 characterized as for their "referral" of Lazar or for their "work and responsibility
9 assumed as counsel" in the Lazar Lawsuits.  Nonetheless, Lazar understood that
10 such payments represented monies that Milberg Weiss owed to Lazar and were
11 made to satisfy Milberg Weiss's payment obligation to Lazar.  Lazar also
12 understood that he could not disclose his payment arrangement with Milberg
13 Weiss to the courts presiding over, or the other parties to, the Lazar Lawsuits.  As
14 a result, in response to questions in his depositions and other discovery in the
15 Lazar Lawsuits, Lazar consistently avoided disclosing the existence of the secret
16 payment arrangement with Milberg Weiss.

17 　　　　Lazar's false declaration to a federal court, in violation of 18 U.S.C.
18 § 1623(a), concerns the PSRLA certification that Lazar signed under penalty of

---

[4] Lazar disputes this $2.5 million amount by focusing on only the amounts of payments that Lazar estimates were made by Milberg Weiss in connection with Lazar Lawsuits in which either Lazar himself or his wife were the named plaintiffs.  Lazar ignores those instances in which Milberg Weiss paid Lazar's intermediaries in connection with Lazar Lawsuits in which Lazar's relatives were named plaintiffs, even though these cases these were subject to the same secret fee sharing agreement with Milberg Weiss.  See Defendant's Position at 2 fn.1, 8, and Exhibit A thereto.  There is no question, however, that as part of scheme Lazar benefitted from the payments that Milberg Weiss made for cases in which his relatives were plaintiffs.  For example, Milberg Weiss paid the Palm Springs Law Firm the sum of $133,000 in 2001 in connection with the Schein Pharmaceutical class action in which Lazar's daughter was the named plaintiff.  At Lazar's direction, these funds were then applied by the Palm Springs Law Firm and others to satisfy Lazar's own financial obligations.  Accordingly, Lazar has amended his 2001 tax return to report the $133,000 as his income.  See also Plea Agreement Exhibit A ¶ 8.e, confirming that Lazar always understood this $133,000 payment was made by Milberg Weiss to him, pursuant their fee sharing agreement.

perjury in 1999 and had submitted to the federal court presiding over the <u>Xerox</u> class action, in which Lazar falsely represented that he would not accept payment for serving as a representative party.[5]

Lazar's subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1), concerns his failure to report on his 2000 return the income he obtained from the Milberg Weiss in tax year 2000, pursuant to the secret payment arrangement. Lazar also failed to report such Milberg Weiss payment income on his 1999 and 2001 returns. The total unreported income for these tax years was $433,000.

Lazar's obstruction of justice, in violation of 18 U.S.C. § 1503, concerns his instructing his accountant in 2002 to destroy documents that Lazar knew were responsive to a subpoena that had been served on Lazar in connection with the government's investigation of his payment arrangement with Milberg Weiss.

Pursuant to the Plea Agreement, at Lazar's sentencing the government will move to dismiss the remaining counts against him charged in the SSI. The dismissed counts may be considered by the Court, however, in determining defendant's sentence. Plea Agreement ¶ 26(b). These counts against Lazar are for conspiracy (count one); racketeering conspiracy (count two); mail fraud (counts three through eight); money laundering conspiracy (count nine); concealment money laundering (counts ten through thirteen); and criminal forfeiture (counts twenty through twenty-two). They all relate to Lazar's participation in the secret payment arrangement with Milberg Weiss described above and the concealment of the proceeds he received in the course of the scheme.

C.   <u>The Recommended Sentence Is Appropriate</u>

The nature and circumstances of Lazar's criminal conduct are no doubt serious. His role in the scheme spanned many years, implicated numerous cases litigated in federal and state courts, and was very profitable for Lazar. He

---

[5] As it turned out, Milberg Weiss did not obtain a fee award in <u>Xerox</u> so no payment was owed to Lazar for that case.

7

repeatedly filed false tax returns that concealed his gains from the scheme and he obstructed the government's investigation of the scheme. Lazar was a licensed lawyer throughout most of the relevant time period, which only serves to heighten his culpability as someone who certainly knew better than to engage in such abuses of trust and deception in connection with these class actions. The 27 to 33 month advisory Sentencing Guidelines range for the three offenses of conviction also reflects their serious nature.

The government submits that Lazar's civil forfeiture of $1,500,000, along with his payment of a $600,000 fine, will serve to disgorge substantially the financial benefits that Lazar received through his participation in the scheme. This $2,100,000 financial penalty was a compromise that the parties negotiated in reaching the Plea Agreement.

The government submits that in order to for Lazar's sentence to comply with the purposes of 18 U.S.C. § 3553(a), namely, to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, and afford adequate deterrence, substantial additional punishment is warranted beyond Lazar's payment of $2,100,000, the loss of his law license, and the attendant humiliation of his felony convictions. To be weighed against punishing Lazar by incarcerating him in prison or imposing community confinement, however, is Lazar's advanced age of 80 years coupled with his poor health condition and continuing need for regular medical treatment. Since the Court is well aware of these matters from the May 14, 2007 hearing and the parties' related briefing concerning defendant's health, the government will not detail them again here. See USPO Barrett Letter at 2-3; PSR ¶¶ 115-119; Defendant's Position at 2-5 further describing Lazar's poor health condition.

Under these circumstances, imposing a term of home detention is equally efficient and likely less costly than incarceration, and is consistent with the advisory Sentencing Guidelines Policy Statements concerning age and physical

condition. See U.S.S.G. §§ 5H1.1, 5H1.4. Such a variance is authorized by 18 U.S.C. § 3553(a)(2)(D), which provides that the court shall consider the need for the sentence imposed "to provide the defendant with needed . . . medical care . . . in the most effective manner." At the same time, a sentence of home confinement for a 6 month period as part of a two year probationary period sufficiently serves to accomplish the purposes of 18 U.S.C. § 3553(a) for Lazar. While Lazar does not pose a threat to the public nor does he require vocational training or other correctional treatment, he does deserve to endure the restriction of his freedom to home confinement (without electronic monitoring) for a period of 6 months as just punishment for these serious offenses and to promote respect for the law.

### IV.  THE COURT SHOULD NOT CREDIT AGAINST DEFENDANT'S SERVICE OF HIS SENTENCE OF HOME DETENTION THE DAYS HE WAS PREVIOUSLY CONFINED TO HIS HOME UNDER PRE-TRIAL SUPERVISION.

Lazar does not dispute that he should be sentenced to a 6-month period of home detention, but instead contends that he should not have to serve any of that home detention once his sentence is imposed. He maintains that he should receive credit against such a period of home detention for the 203 days that he was confined to his home as a condition of his pre-trial release during the early months of the case. He contends he would be unfairly required to "serve twice an identical sentence" if he is subjected to further home confinement. Lazar couples this position with a request that the Court remove all travel restrictions from his conditions of probation. See Defendant's Position at 11-13.[6] If adopted, this would essentially mean that once Lazar is sentenced (assuming his full payment of the civil forfeiture and fine amounts), he would not have to endure any further

---

[6] The government submits that Lazar should be subject to the Standard Conditions of Probation of General Order 318, including its requirement that defendant not leave this district without the written permission of the Court or the Probation Officer, during the time Lazar is serving his term of home detention. The government takes no position as to whether these travel restrictions are necessary and should continue once Lazar completes his home detention for the remainder of his term of probation.

9

significant punishment for his crimes.  In view of the substantial reduction in his sentence that is already being recommended by the government and the Probation Office for his serious offense conduct, this simply goes too far.  Lazar's position should be rejected because it would result in a sentence the fails to impose adequate punishment.

Lazar's reliance on Jonah R. v. Carmona, 446 F.3d 1000, 1010 (9th Cir. 2006) is misplaced since that case concerned application of 18 U.S.C. § 3585(b), which provides that a defendant shall be given credit toward the service of "a term of imprisonment" for time he has spent in "official detention" prior to the date the sentence commences, if certain condition are met.  Section 3585(b) simply has no application to Lazar because his pre-trial home confinement did not constitute "official detention."  See Reno v. Kornay, 515 U.S. 50, 59 (1995) ("official detention" in § 3585(b) means confinement in the custody of the Attorney General).  Moreover, Section 3585(b) does not authorize a district court to award credit at sentencing, as that determination is to be made by the Bureau of Prisons. U.S. v. Wilson, 503 U.S. 329, 331-336 (1992).  Finally, the reduction provided by Section 3585(b) does not apply to reduce a term of probation because probation is not a term of imprisonment.  See United States v. Dowling, 962 F.2d 390, 392-394 (5th Cir. 1992) (district court did not error in refusing to give defendant credit for his time in a half-way house to reduce the term of his sentence of probation).

**V.   CONCLUSION**

For the reasons stated above, the government respectfully submits that the Court should sentence Lazar in accordance with its recommendation.  Such a sentence is also supported by the Probation Office's recommendation and is consistent with the parties' Plea Agreement.  In particular, adequate punishment requires that Lazar be required to serve 6 months in home detention, without credit for his pre-trial home confinement, along with his payment of a $600,000 fine and civil forfeiture of $1,500,000 to the government.